MILTON GOLDMAN DBA POPULAR CLEANERS AND TEXAS EMPLOYERS INSURANCE ASSOCIATION V. ALICIA TORRES, A FEME SOLE.

No. A-7906. Decided December 7, 1960.
Rehearing Overruled December 31, 1960.
(341 S.W. 2d Series 154)

438

*Edwards, Belk Hunter & Kerr* and *Eugene T. Edwards,* of El Paso, for petitioner.

*White & Morton, Albert Armendariz* and *Frederick T. Morton,* of El Paso, for respondent.

MR. JUSTICE SMITH delivered the opinion of the Court.

Alicia Torres filed this suit in the District Court of El Paso County, Texas, seeking to set aside an award made under the Workmen's Compensation Act by the Industrial Accident Board, and to recover compensation for injuries, including disfigurement, as the result of severe burns sustained by her on January 13, 1958, while in the employ of Milton Goldman d/b/a Popular Cleaners. The employer was made a party to the suit, along with the Texas Employers Insurance Association. A take-nothing judgment was entered in favor of the employer, and no complaint was made of such action.

The case was tried to the court and a jury. The jury found, in answer to special issues which were submitted without objection, that respondent sustained total disability for a period of seventeen weeks; that respondent sustained partial disability as the result of injuries sustained and that the partial disability began on May 15, 1958, and that this partial disability was of permanent duration.

In answer to Special Issue No. 6, the jury found that the injuries sustained by respondent had resulted in a physical disfigurement and that such physical disfigurement "will impair her usefulness or occupational opportunities, taking into consideration the nature of the disfigurement, her age at the time of her injury, and the occupation of plaintiff." The jury found in answer to Special Issue No. 7 that the injury received by respondent was confined solely to her right arm, below the elbow.

The jury found in answer to Special Issue No. 8 that the percentage of such partial disability, including the disfigurement, was 20 per cent.

The evidence is undisputed that all of the injuries, including the disfigurement sustained by the respondent, were confined solely to her right arm, below the elbow. The respondent contends, however, that the answer to Special Issue No. 6 is controlling, and that the answer to Special Issue No. 7 that the injuries were confined solely to her right arm, below the elbow, encompassed only the injuries other than the physical disfigurement as a result of the burns. The trial court refused to follow this reasoning and rendered judgment in accordance with Article 8306, Sec. 12, Vernon's Annotated Civil Statutes, wherein it is provided: (1) that for the loss of a hand compensation shall be paid on the basis of 60 per cent of the average weekly wage during *150 weeks,* and (2) that "in all cases of permanent partial incapacity it shall be considered that the permanent loss of the use of that member is equivalent to, and shall draw the same compensation as the loss of that member; but the compensation in and by said schedule provided shall be in lieu of all other compensation in such cases."

The Court of Civil Appeals reversed the judgment of the trial court and remanded the case to that court with instructions to calculate respondent's recovery on the basis of 300 weeks instead of 150 weeks. 335 S.W. 2d 675.

Such action followed the theory urged by the respondent that the physical disfigurement sustained as the result of the burns is a separate and distinct injury from the other specific injuries to the arm below the elbow. Respondent argues that she sustained concurrent injuries resulting in concurrent incapacities, and, therefore, she is entitled to a recovery on the basis of 300 weeks, as provided in the last paragraph of Article 8306, supra, which reads:

"In all other cases of partial incapacity, including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employee, compensation shall be determined according to the percentage of incapacity, taking into account among other things any previous incapacity, the nature of the physical injury or disfigurement, the occupation of the injured employee, and the age at the time of injury. The compensation paid therefor shall be calculated by first determining a basic figure amounting to sixty per cent (60%) of the average weekly wages of the employee, but which basic figure shall not exceed Thirty-five Dollars ($35); such basic figure shall then by multiplied by the percentage of incapacity caused by the injury, and the result shall be the weekly com-

pensation which shall be paid for such period not exceeding three hundred (300) weeks as the Board may determine. Whenever the weekly payments under this paragraph would be less than Three Dollars ($3) per week, the period may be shortened, and the payments correspondingly increased by the Board."

The court cites no authority in support of its judgment, and we have found no Texas case involving the precise question presented here. However, we have concluded to reverse the judgment of the Court of Civil Appeals and affirm the judgment entered by the trial court for the reasons now to be stated.

Disfigurement awards are now permitted by statute in thirty one states. See *Larson's Workmen's Compensation Law*, Vol. 2, par. 58.31, p. 47. Apparently there is no universal rule which can be applied in this type of case for the simple reason that a determination as to which provision of the statute is applicable is dependent upon statutory interpretation of the language of the particular Act under consideration. For example, most of the reported decisions in other jurisdictions are expressly premised upon statutory provisions either allowing or disallowing additional compensation for the disfigurement of a member when compensation for the loss of use of the same member has been allowed. See Case v. Pillsbury, 9 Cir. 148 Fed. 2d 392; General Motors Corporation v. Vaccarini, 8 Terry, 47 Del. 499, 93 Atl. 2d 739, affirmed at 9 Terry, 48 Del. 80, 97 Atl. 2d 550; Elkins v. Lallier, 38 N.M. 316, 32 Pac. 2d 759; White v. R. C. Owen Co., 232 Miss. 268, 98 So. 2d 650, 652 (1957) ; Williams v. Roy Motor Company and Hardware Mutual Casualty Company, 237 Miss. 750, 115 So. 2d 924; Sweeting v. American Knife Co. et al., 226 N.Y. 199, 123 N.E. 82; Brown v. State Workmen's Ins. Fund et al., 131 Pa. Super 226, 200 Atl. 174; Sustar v. Penn Smokeless Coal Co., et al., 85 Pa. 531; Bethlehem-Sparrows Point Shipyard v. Damasiewicz, 187 Md. 483, 50 Atl. 2d 799, 804; Southern States Marketing Cooperative, Inc. v. Lippa, 193 Md. 385, 67 Atl. 244; International Coal & Mining Co. v. Industrial Commission, 293 Ill. 524, 127 N.E. 703, 10 A.L.R. 1010; Denver & Rio Grande Western R. Co. v. Industrial Commission of Utah, 73 Utah 86, 272 Pac. 239.

The Maryland case, Damasiewicz, supra, had under consideration the question of whether a workman who was awarded compensation for temporary disability resulting from a leg injury was also entitled to compensation for disfigurement from the same injury. The provision of the statute under consideration provided:

"* * * For other mutilations and disfigurements, not hereinbefore provided for, compensation shall be allowed in the discretion of the Commission for not less than ten weeks nor more than one hundred weeks, as the Commission may fix, in each case having due regard to the character of the mutilation and disfigurement as compared with mutilation and injury hereinbefore specifically provided for." Code Supp. 1943, Art. 101, section 48 (3).

The court recognized "that a disfigurement may constitute an economic loss in the sense of diminished power to produce, and it may be as much part of the workman's loss as the loss of limb." However, the court held that the disfigurement and the disability were caused by a single injury, and, therefore, the workman was not entitled to compensation for disfigurement from the same injury. The court in disposing of the question said:

"* * * For in this particular case the disfigurement is plainly not within the purview of the Act. The Legislature, in providing for compensation for 'other mutilations and disfigurements, not hereinbefore provided for,' intended to make compensable other injuries which are similar to amputation or loss of use of members of the body specified in the schedule in so far as they are permanent and their degree and consequences can be ascertained. We construe the provision to mean that where an employee receives two injuries, one of which disables and the other disfigures, he may receive compensation for both the disability and the disfigurement; but where an employee is disabled and disfigured by the same injury, he is not entitled to receive compensation for both disability and disfigurement. * * *."

In the State of Pennsylvania, compensation for permanent disfigurement of the head or face may be awarded under the Workmen's Compensation Act of that state. The Act provides:

"For serious and permanent disfigurement of the head or face of such character as to produce an unsightly appearance, and such as is not usually incident to the employment, sixty-five percentum of wages not to exceed one hundred and fifty weeks."

In the Brown case, supra (Pa.) the workman was seeking compensation for the loss of an eye, and for disfigurement because of the loss of such member. The court held that where compensation, in addition to the amount allowed for the loss of

a member of the body, is claimed, it was essential to show that some other part of the body was affected as a direct result of the injury. The court held that the facts showing that the claimant received an injury, on May 23, 1929, which resulted in the industrial loss of the use of his right eye, and later on July 7, 1936, the claimant sustained an injury to the same eye, which necessitated its removal, were insufficient to establish that any part of his face or head other than his eye was affected by the second injury. Therefore ,compensation for disfigurement was not allowed.

The courts of Mississippi have had occasion to pass upon suits brought to recover compensation for permanent partial disability to a member of the body, as well as compensation for disfigurement. The Mississippi Act, Article 6998-09 (c) provides for compensation for disability to specific members or, in other words, for specific injuries. Disfigurement is listed as Number 20, and reads:

"(20) Disfigurement: The commission, in its discretion is authorized to award proper and equitable compensation for serious facial or head disfigurements not to exceed two thousand dollars ($2,000.00). Provided, however, no such award shall be made until a lapse of one year from the date of the injury resulting in such disfigurement."

In the Williams case, supra, where the compensation claimant sustained the loss of an eye in an industrial accident and received no scars or injuries to his head or face other than the loss of the eye, the Supreme Court of Mississippi held that the claimant was not entitled to an award for disfigurement in addition to an award for the loss of the eye. The court considered that the statutory provision for the loss of an eye and the statutory provision for disfigurement were independent of one another and that under the facts the Commission did not abuse its discretion in denying the claim for disfigurement.

The Maryland case of Southern States Marketing Cooperative, Inc. v. Lippa, supra, involved a state of facts showing that the claimant sustained permanent partial disability for the loss of the use of her right thumb, and a cut on the right forearm which severed three tendons and left a three-inch scar. In the Maryland Workmen's Code there was a provision, at the time, for the payment of compensation for the loss of the use of a thumb, and for disfigurement. The court, after an exhaustive analysis of cases from other jurisdictions as well as those of

the State of Maryland, in holding that the claimant was entitled to compensation for each injury, said:

"From these authorities we are of opinion that where there is a disability, and a scar which is independent of the disability and not a part of it, which is occasioned by an accident, the workman should be compensated for both the disability and the disfigurement caused by the scar. If a scar is caused by and is the result of an injury for which compensation is allowed, then the scar is a part of that injury and is comprehended by it and the workman cannot recover for both disability and disfigurement.

"In this case * * *. *The scar is not on the thumb, where the disability was suffered, and if such were the case she could not recover for disfigurement, because the scar would be the result of the injury to the thumb.*" [Emphasis added.]

In that case, as a result of the accident, the claimant sustained two injuries, one to the thumb and the other the scar on her forearm, a separate and distinct member of the body from the thumb. It is true that cases such as Case v. Pillsbury, General Motors Corporation v. Vaccarini, and Elkins v. Lallier, supra, allowed additional compensation for disfigurement, but in each instance the statute and the facts permitted such action. The court in the Pillsbury case allowed compensation for disfigurement in view of the statute which provided:

"The deputy commissioner *shall* award proper and equitable compensation for serious facial or head disfigurement, not to exceed $3,500."

The facts were that a foreign body had entered the claimant's eye causing an ulcer and 80 per cent loss of vision. Based on these facts, the deputy commissioner awarded compensation for 140 weeks at $25 per week for permanent partial disability and $750 for serious facial and head disfigurement. The General Motors and Elkins cases reached the same result based on similar statutes as that involved in the Pillsbury case.

While the decisions rendered in the cases above discussed may not be decisive of the question here presented, we think our analysis of the cases at least demonstrates that the question of whether the claimant in the present case can receover compensation under the provisions of the last paragraph of Section 12, supra, or is confined to a recovery for the loss of the use

of a hand is to be determined in the light of our Workmen's Compensation Act, and particularly Section 12, the section specifically involved here. We are cognizant of our uniform holdings that the Workmen's Compensation law is a remedial statute and must be given a liberal construction with a view to accomplish its purposes and to, at the same time, promote justice, and that the courts of this state have consistently held that the Workmen's Compensation Acts are to be liberally construed for the protection of the workman. See Texas Employers' Insurance Association v. Holmes, 145 Teas 158, 196 S.W. 2d 390. Even though these rules have been uniformly announced and followed, this court cannot, under the guise of liberal construction, usurp the power of the legislature by reading into the Act a provision that is not there. Necessarily, we must take into consideration the several applicable provisions of Section 12 of Article 8306, supra. In addition to the last paragraph of said section, we are concerned with the following pertinent provisions, the first paragraph of which reads:

"Sec. 12.  For the injuries enumerated in the following schedule the employee shall receive in lieu of all other compensation except medical aid, hospital services and medicines as elsewhere herein provided, a weekly compensation equal to sixty per cent (60%) of the average weekly wages of such employee * * * ."

Immediately following this paragraph, we find a list of specific awards for the loss of certain members of the body. In this connection, we point out that the statute makes no specific provision for a disfigurement award as such. The only time disfigurement appears is in the last paragraph of Section 12. Disfigurement awards are closely related to schedule awards for loss of or loss of the use of specific members, since they take the form of a more or less arbitrary sum not based upon actual evidence of wage loss. Larson, supra, par. 58.31, p. 47. Among the schedule of awards is the one which is appropriate here. It reads: "For the loss of a hand, sixty per cent (60%) of the average weekly wage during one hundred and fifty (150) weeks." Following these scheduled awards appears a provision which reads: "In the foregoing enumerated cases of permanent, partial incapacity, it shall be considered that the permanent loss of the use of a member shall be equivalent to and draw the same compensation as the loss of that member." Then follows a schedule of awards (1) for the loss of the hearing in both ears, (2) for the loss of an eye and leg above the knee, (3) for the loss of an eye and an arm above the elbow, and (4)

for the loss of an eye and a foot. This schedule is followed by the paragraph which provides that "Where the employee sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the injury which produces the longest period of incapacity * * * ."

The respondent relies upon this latter provision to sustain her contentio nthat she is entitled to payment of compensation for 300 weeks,—the contention being that the respondent has sustained a permanent loss of the use of the hand, and also a disfigurement of the same member, and that the incapacity from each being concurrent, and the disfigurement award being the greater, she is entitled to compensation for 300 weeks. With this contention we cannot agree.

■ It is well settled that for the loss of an arm below the elbow the injured workman is compensated as for the loss of a hand. Aetna Life Insurance Company v. Rodriguez, Texas Civ. App., 255 S.W. 446, no wr. hist. The holding in this case, where the sole injury was below the elbow, was quoted with approval in the case of Lumbermen's Reciprocal Association v. Pollard, Texas Com. App., 10 S.W. 2d 982. In the Rodriguez case, the permanent injuries sustained by the workman comprised one burn, beginning a few inches below the elbow, and extending down to and along the wrist. In the Pollard case, the workman's sole injury was below the elbow. The court in that case held that the injury was but one, and that to the hand. It was further held that such an injury could not be divided into two units.

In the case of State ex rel. Kennedy v. District Court of Clay County, 129 Minn. 91, 151 N.W. 530, the Supreme Court of Minnesota, in discussing an attempt to divide an injury to the hand into two units, one to the hand and one to the arm, stated:

"We think the trouble arises largely, if not wholly, with the attempt of the trial court to separate the injuries into two units: Those to the hand, and those to the arm. * * * If there were no injuries except to the hand and forearm, we think the court should have awarded compensation based upon a percentage of total disability to the hand. If there were permanent injuries to the arm above the elbow, the court should not have attempted to separate these injuries from those to the hand, but should have found the percentage of total disability to the arm as a whole, and should have awarded compensation accordingly. If the division of the arm into two units for the purpose of fixing compensation under the Act is proper, there would be no reason for

saying that the thumb, the different fingers, phalanges of the thumb and of each finger, might each be considered as a separate unit and the compensation allowed for these injuries added together and added to the compensation allowed for the loss of a hand or arm. This was plainly not the intent of the law. There should be but one unit for measuring the injury and the compensation to be awarded."

■ In the present case, the respondent sustained but one injury to only one member of the body. The disfigurement is a part of the injury to the arm below the elbow. The evidence shows that the respondent, while working in a laundry, sustained "third degree burns to the dorsal or top part of the forearm, and hand and some of the fingers * * * ." No other member of the body was burned. Under the facts in this case there was only one member of the body involved. The respondent, under her own testimony, sustained but a single injury. Since all injuries including the disfigurement involved only the arm below the elbow, it cannot be successfully argued that concurrent injuries were sustained. The scar or disfigurement is not on some other member of the body, but is on the arm below the elbow (the hand) where the disability was suffered, therefore she cannot recover for disfigurement because th disfigurement is the result of the injury to the hand. In this respect, the reasoning in the Lippa case, supra, is applicable here. In the case of Suster v. Penn Smokeless Coal Co., supra, the court held that the claimant who had lost an eye as a result of an explosion of dynamite, and sustained a serious and permanent disfigurement of his face wholly apart from the loss of the eye, was entitled to an award. But, there, the permanent disfigurement was a separate and distinct injury to another part of his face.

The Legislature of Texas could have easily enacted as a part of Section 12 a schedule for disfigurement awards, if it had so desired. It could have enacted a provision that would have provided for compensation for disfigurement of the arm below the elbow, or for sever facial disfigurement. The Act does not so provide. To the contrary, it is evident that by the use of the words: "In all other cases of partial incapacity," in the beginning of the last paragraph of Section 12, supra, the legislature contemplated the payment of compensation for disfigurement only in cases where the workman sustained a compensable disfigurement of some member or part of the body other than the specifically injured member. We are not, however, called upon to decide, and we do not purport to determine the question of whether or not a disfigurement of any part of the body would

be compensable. Some jurisdictions place disfigurement of the face, neck, and hands in a separate compensable class,—the intention being to compensate for disfigurement of certain portions of the body which are ordinarily exposed. See Finoia v. Winchester Repeating Arms Co., 130 Conn. 381, 34 A. 2d 636. In other jurisdictions, the statutes are general in the sense that no particular part of the body is described in the disfigurement schedule.

Disfigurement has been defined as that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen or imperfect, or deforms in some manner. Superior Mining Company v. Industrial Commission, 309 Ill. 339, 141 N.E. 165. There can be no question but that this respondent has sustained a disfigurement of the arm below the elbow. However, in view of the reference to "all other cases of partial incapacity" in the opening words of the last paragraph, we hold that such words limit the statute's application to those injuries not theretofore mentioned, which includes any disfigurement which will impair the future usefulness or occupational opportunities of the injured employee. This view was expressed by Mr. Justice Folley in a dissenting opinion in the Holmes case, supra, and on this particular holding, the court did not disagree. This court later refused a writ of error in the case of Fidelity & Casualty Company of New York v. Shores, Texas Civ. App., 329 S.W. 2d 911. The Court of Civil Appeals had before it the contention that the calculation of the amount of weekly compensation should be made under the last paragraph of Section 12, Article 8306, supra, and that the period over which such weekly compensation was to be paid should be 300 weeks as provided in the same paragraph. The court declined to fix the period at 300 weeks and held that the period over which compensation was payable was the 200 weeks provided in the schedule of awards for the total loss of, or total loss of the use of a leg.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Opinion delivered December 7, 1960.

Rehearing overruled December 31, 1960.