**DANIELS BUILDING AND CONSTRUCTION, INC. and Terry L. Daniels, Appellants,**

v.

**SILSBEE INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. 09–98–294 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 25, 1999.

Decided May 27, 1999.

Rehearing Overruled June 24, 1999.

---

Michael D. Matthews, Bill Richey, Griffin & Matthews, Beaumont, for appellants.

Bruce M. Partain, J. Mitchell Smith, Tanner Hunt, Jr., Wells, Peyton, Greenberg & Hunt, Beaumont, for appellee.

Before WALKER, C.J., BURGESS and FARRIS,[1] JJ.

## OPINION

DAVID FARRIS, Justice (Assigned).

The issue in this case is whether or not a school district that chooses to use the construction manager-at-risk method to build a school must comply with the publication of notice requirements of TEX. EDUC.CODE ANN. § 44.031(g) (Vernon Supp.1999). We hold that it must and find that the Silsbee Independent School District did not. We find the trial court erred in denying the relief requested by the appellants and reverse and remand this cause for entry of an injunction and a hearing on attorney fees.

The district elected to build a new school using the construction manager-at-risk (CMAR) method under TEX. EDUC.CODE ANN. § 44.038 (Vernon Supp.1999). The CMAR method is one of the alternatives a school district may use to construct a building. These alternatives allow a district to award a contract to the offeror offering the best value rather than merely the lowest price. *See* TEX. EDUC.CODE. ANN. § 44.038(h)(Vernon Supp.1999). The CMAR alternative permits a district to provide for prequalified offerors before proposals are submitted. But prequalification neither conclusively determines that a

---

1. The Honorable David Farris, sitting by assignment pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1998).

prequalified offeror offers the best value nor bars a district from determining an offeror, who failed to prequalify, offers the best value. *See* TEX. EDUC.CODE ANN. § 44.038(f)(Vernon Supp.1999).

After selecting an architect to prepare the construction documents and oversee compliance, the district published a notice announcing a deadline for applicants interested in being the CMAR to submit "Requests for Qualifications." The notice explained that the CMAR would serve as the general contractor for the construction of a new high school with an estimated project budget of approximately $19,000,000.00. The notice listed the qualifications that should be included in a "Request for Qualifications" and listed the selection criteria the district would consider in determining the most qualified applicants from whom the district would request formal Competitive Sealed Proposals. The notice was published in two newspapers on March 26 and April 2, 1998.

On April 15 the district sent letters to two prequalified offerors chosen from those who responded to the published notice. The letters requested sealed proposals by April 20. The letter included a form to be used in submitting a proposal. It is evident that one could not submit a proposal without knowing the information requested by the form. One of the two prequalifiers was Daniels Building and Construction Inc., (Daniels). Terry Daniels is Daniels's president. Daniels was not selected as the CMAR; instead, the district chose Allco, Inc., the other prequalifier.

Daniels and Terry Daniels sued, asking the trial court to enjoin the district from performing its CMAR contract with Allco and seeking attorney fees. Both sides moved for summary judgment and the trial court granted the district's motion while overruling Daniels's motion.

The appellants assert that the district was required to publish the time by and place where competitive sealed proposals were to be received. Appellants contend that the publication must comply with the requirements of § 44.031(g). Appellants argue that if the § 44.031(g) requirements are not applied there is no requirement that a district give public notice before entering into a CMAR contract and, consequently, a district could abuse the process by excluding offerors who did not prequalify, thereby contradicting § 44.038(f). In support of this argument appellants point out that the letters requesting Daniels and Allco to submit competitive sealed proposals were sent only five days before the deadline and there was no way that offerors who did not prequalify could have learned of the deadline for submitting proposals or of the details a proposal should include.

The district contends that it did not have to advertise to obtain competitive sealed proposals for a CMAR because the only applicable notice provisions are provided by § 44.038. If § 44.031(g) applies to a CMAR, the district contends that appellants are not entitled to injunctive relief because they had notice and thus cannot show that they will suffer irreparable harm under TEX. CIV. PRAC. & REM.CODE ANN. § 65.011 (Vernon 1997).

■■■ We hold that § 44.031(g) applies to CMAR contracts and the district was required by that statute to publish notice of the deadline for submitting sealed competitive proposals. We further hold that the published notice advertising the district's intent to employ a CMAR did not serve as notice of the deadline for submitting sealed competitive proposals. The CMAR statute does not provide an alternative means of notifying offerors who do not prequalify; consequently, the district effectively excluded offerors who did not prequalify despite the stated intent of § 44.038(f).

■■■ The district argues TEX. EDUC.CODE ANN. § 44.032(f) (Vernon 1996) does not apply because its actions did not violate TEX. EDUC.CODE ANN. § 44.031(a) or (b) (Vernon Supp.1999). We disagree. Sec-

tion 44.031(a) is a laundry list of methods whereby school districts enter into purchasing contracts. School districts are required to select the method that provides the best value to the district. Section 44.031(a) may be violated only by failing to comply with the requirements of underlying statutes, in this case § 44.038 and § 44.031(g). Having chosen the CMAR method from the laundry list, the school district must comply with the requirements of § 44.038 and the notice requirements of § 44.031(g). If it does not, the school district violates § 44.031(a) and is subject to injunction under § 44.032(f). The trial court erred in failing to grant the injunction requested by Daniels. We reverse the judgment of the trial court and remand the cause for entry of an injunction and for a hearing on attorney fees for the appellants.

REVERSED AND REMANDED.

DON BURGESS, Justice, dissenting.

I concur in much of the majority's analysis, but respectfully dissent to the result. The core issue, whether electing to proceed under TEX. EDUC.CODE ANN. § 44.038 (Vernon 1996 & Supp.1999) still requires compliance with TEX. EDUC.CODE ANN. § 44.031(g) (Vernon Supp.1999), was correctly decided by the majority and I wholeheartedly concur with that portion of the opinion. I differ with the majority in their interpretation of TEX. EDUC.CODE ANN. § 44.032(f) (Vernon 1996).[1]

The majority holds that a violation of section 44.031(g) becomes a violation of section 44.031(a), thus triggering section 44.032(f), the enforcement provision. This interpretation runs counter to both statutory enactment and judicial precedent. TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 1998), tells us that the legislature, in enacting a statute, presumed that the entire

statute was intended to be effective. *See Escobar v. Sutherland,* 917 S.W.2d 399, 407 (Tex.App.—El Paso 1996, no writ). Furthermore, in statutory construction, all words and phrases of an entire act must be considered together, and "one provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such construction if standing alone." *Black v. American Bankers Ins. Co.,* 478 S.W.2d 434, 437 (Tex.1972).

If the legislature had intended for injunctive relief to be available for all sections of section 44.031 they would not have specifically designated sections 44.041(a) or (b). We should give effect to all parts of a statute and not treat any statutory language as surplusage if possible. *See Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987) (citing *Perkins v. State,* 367 S.W.2d 140 (Tex.1963)). It has been so well established, and recognized by this court, as to be almost unnecessary for citation that courts, having and possessing no legislative powers, cannot enlarge or alter the plain meaning of statutory language. *See Goldman v. Torres,* 161 Tex. 437, 341 S.W.2d 154, 160 (1960). Further, the wording in a statute is to be given its literal interpretation when that wording is clear and unambiguous and any defects or deficiencies must be supplied by the Legislature, not the courts. *See Board of Ins. Comm'rs. v. Guardian Life Ins. Co.,* 142 Tex. 630, 180 S.W.2d 906, 909 (1944). In applying the above principles to this case, it simply cannot be assumed that the Legislature's decision to allow injunctive relief for a violation on only (a) and (b) of section 44.041 was inadvertent and of no effect. *See Mathews Const. Co., Inc. v. Jasper Housing Const. Co.,* 528 S.W.2d 323, 326 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.).

---

1. (f) A court may enjoin performance of a contract made in violation of Section 44.031(a) or (b). A county attorney, a district attorney, a criminal district attorney, or a citizen of the county in which the school district is located may bring an action for an injunction. A citizen who prevails in an action brought under this subsection is entitled to reasonable attorney's fees as approved by the court.

It is our duty to construe the statute as written by the legislature, not to edit or amend it. Courts may not choose to redraft legislation just because another version might be more equitable. Appropriate relief must come from the legislature rather than the courts. Furthermore, the legislature has set out a penalty for a violation of section 44.041(g).[2]

Lastly, the majority's rendition of a temporary injunction at this point is both legally and equitably questionable. Section 44.032(f) states: "A court *may* enjoin performance of a contract made in violation of Section 44.031(a) or (b)" (emphasis added), thus the statute allows some discretion to the trial court. The majority takes that discretion away through their rendition. The majority's action, from an equitable standpoint, is even less defensible. They require the trial court to enjoin further performance of the contract without regard to the status of the construction or the consequences to be suffered by Allco, Inc., the successful bidder, who is an altogether innocent party.

To bring a $19,000,000 construction project to a halt will result in unnecessary costs which will ultimately be borne by the taxpayers of the school district.[3]

For the reasons stated, I respectfully dissent to the majority's disposition.

---

2. § 44.032. Enforcement of Purchase Procedures: Criminal Penalties; Removal; Ineligibility

. . . .

(b) An officer, employee, or agent of a school district commits an offense if the person with criminal negligence makes or authorizes separate, sequential, or component purchases to avoid the requirements of Section 44.031(a) or (b). An offense under this subsection is a Class B misdemeanor and is an offense involving moral turpitude.

(c) An officer, employee, or agent of a school district commits an offense if the person with criminal negligence violates Section 44.031(a) or (b) other than by conduct described by Subsection (b). An offense under this subsection is a Class B misdemeanor and is an offense involving moral turpitude.

(d) An officer or employee of a school district commits an offense if the officer or employee knowingly violates Section 44.031, other than by conduct described by Subsection (b) or (c). An offense under this subsection is a Class C misdemeanor.

3. Clearly it is in the patrons best interest for the board of trustees to negotiate a settlement of this litigation rather than face a shut down of the construction.