**John Rasheed SHIKE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–95–00578–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

July 31, 1997.

Rehearing Overruled Sept. 23, 1997.

Discretionary Review Refused March 11, 1998.

---

Vivian R. King, Houston, for Appellant.

John B. Holmes, Keli Pool Roper, Houston, for Appellee.

Before SCHNEIDER, C.J., and MIRABAL and O'CONNOR, JJ.

## OPINION

MIRABAL, Justice.

A jury found appellant, John Rasheed Shike, guilty of the offense of unwarranted mental health commitment, and assessed punishment at 180–days confinement and a $5000 fine. We affirm.

In three points of error, appellant asserts the evidence is legally and factually insufficient to support his conviction. Specifically, appellant complains the evidence is insufficient to prove:

(1) that appellant had complainant *committed;* [1] and

(2) that appellant is *the person* who had complainant committed.

■ In testing the legal sufficiency of the evidence, we consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Girard v. State,* 631 S.W.2d 162, 163 (Tex.Crim. App.1982). In reviewing factual sufficiency, we are to view all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). We apply the factual sufficiency test to the facts without the prism of "in the light most favorable to the verdict." *Id.*

■ The evidence shows that appellant and his wife, the complainant, were embroiled in a bitter divorce. At approximately 8:45 p.m. on August 31, 1993, complainant heard a knock on her door at home. When she opened her door, she found two constables and appellant standing outside. Appellant, smiling and laughing, told the constables, "There she is." The constable informed

---

1. The jury charge did not contain a definition of "committed" or "commitment." Appellant did not object to the jury charge or request any additional jury instructions, nor does appellant complain about the jury charge on appeal.

complainant that they had a warrant requiring that they take her to a mental hospital. Complainant was then transported to the Harris County Psychiatric Center (psychiatric hospital).

At the psychiatric hospital, complainant was admitted as a patient by Dr. Amira Abdulla, and assigned to unit 1B, room 74, bed B. During her stay, complainant was required to submit a sample of her blood and urine for testing. Her pulse, temperature, and blood pressure were monitored throughout her stay. She was required to remain in the hospital overnight, and was not discharged until 1:00 p.m. the next day, nearly 16 hours after she had been admitted to the psychiatric hospital. According to the medical records, complainant was discharged because the doctors concluded she was not a danger to herself or others.

The medical records "discharge summary" states that "Patient was committed by Husband," and complainant's "Admission History" states that complainant was "Filed upon by her husband." Complainant's "Nursing Assessment Form" contains the following statement, "My husband put me here because two [weeks] ago I put him in here." Another witness testified that the reason appellant committed complainant was that they were having marital problems. Appellant himself testified that he committed complainant.

The jury was charged as follows:

Our statutes provide that a person commits an offense if the person intentionally causes the unwarranted commitment of another person to a mental health facility.

. . . .

Therefore, if you believe from the evidence beyond a reasonable doubt that the Defendant ... on or about August 31, 1993, in Harris County, Texas, did intentionally cause the unwarranted commitment of SABA SHIKE ... to a mental health facility, namely the Harris County Psychiatric Center, you will find the Defendant guilty.

Appellant first argues that the State failed to meet its burden to prove complainant was "committed" because it failed to put on evidence showing that the statutory procedures for involuntary commitment were followed. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 573.011–573.025 and §§ 574.001–574.087.[2]

The Health and Safety Code makes a distinction between "emergency detention," TEX. HEALTH & SAFETY CODE ANN. §§ 573.011–573.025, and "court-ordered mental health services," TEX. HEALTH & SAFETY CODE ANN. §§ 574.001–574.087. Under subchapter B of chapter 573, a person may file, in person to a magistrate, a written application for the emergency detention of another person. TEX. HEALTH & SAFETY CODE ANN. § 573.012(a). The application must detail the reasons the applicant believes the person is mentally ill and describe how the person's recent behavior evidences a substantial risk of danger to himself or others. TEX. HEALTH & SAFETY CODE ANN. § 573.011 (Vernon 1992). If a judge or magistrate finds reasonable cause to believe the person evidences mental illness and poses a substantial and imminent risk of serious harm to himself or to others, the magistrate shall grant the application and issue a warrant for the person's immediate apprehension and transportation to a mental health facility for a preliminary examination. TEX. HEALTH & SAFETY CODE ANN. § 573.012(b), (d), (e) (Vernon 1992). This warrant serves as an application for the person's detention in the facility for a preliminary examination. TEX. HEALTH & SAFETY CODE ANN. §§ 573.012(f), 573.021(b) (Vernon 1992). A physician must examine the person as soon as possible within 24 hours of the person's apprehension. TEX. HEALTH & SAFETY CODE ANN. § 573.021(c) (Vernon 1992). A person may be admitted to a facility for emergency detention only if the examining physician makes a written statement that the person meets all the statutory criteria for being admitted. TEX. HEALTH & SAFETY CODE ANN. § 573.022 (Vernon 1992). Finally, a person not admitted under these emergency procedures must be released. TEX. HEALTH &

---

**2.** Subsections (a) and (g) of section 573.012 were amended by Act of May 16, 1995, 74th Leg., R.S., ch. 243, § 3, 1995 Tex. Gen. Laws 2151, 2152 (effective August 28, 1995). The amendments do not apply here because the offense occurred on August 31, 1993. All references to chapter 573 are to the version that existed prior to the 1995 amendments.

SAFETY CODE ANN. § 573.023(a) (Vernon 1992).

Chapter 574 allows an adult to file a sworn written application for court-ordered mental health services for a proposed patient. TEX. HEALTH & SAFETY CODE ANN. § 574.001(a) (Vernon 1992). The proposed patient has a right to legal representation regarding the commitment proceedings. TEX. HEALTH & SAFETY CODE ANN. § 574.003 (Vernon 1992). Within 14 days after the filing of the application for court-ordered commitment, the judge or a designated magistrate must set the cause for hearing. TEX. HEALTH & SAFETY CODE ANN. § 574.005(a) (Vernon 1992). The hearing on the application may not be held, however, unless at least two different physicians have examined the patient and have filed sworn certificates of medical examination for mental illness with the court within 30 days of the hearing. TEX. HEALTH & SAFETY CODE ANN. § 574.009 (Vernon 1992). A judge or jury may determine a proposed patient requires court-ordered temporary mental health service based on clear and convincing evidence. TEX. HEALTH & SAFETY CODE ANN. § 574.034 (Vernon 1992).

■ Appellant argues that the State had the burden to prove complainant was "committed" *under section 574.* The State contends appellant's interpretation of "commitment" is contrary to the intent of section 571.020, which provides for criminal prosecution to deter individuals from acting to effect the unnecessary and improper commitment of another to a mental health facility.[3] TEX. HEALTH & SAFETY CODE ANN. § 571.020(a).[4] We agree with the State. If criminal prosecution under section 571.020 only applies to persons who initiate and complete the procedures for court-ordered mental health ser-

vices under chapter 574, then the State would face an almost insurmountable task. It would be required to prove as unwarranted at least two physicians' opinions. It would also need to overcome the judge's determination that those opinions, and his own observations, supported commitment by clear and convincing evidence. We conclude that while section 571.020 can apply to commitments under chapter 574, it is not limited to those types of court-ordered commitments. We hold that section 571.020 also applies to commitments under chapter 573.

Appellant cites *Hill v. State,* 897 S.W.2d 533 (Tex.App.—Fort Worth 1995, no pet.) as being the controlling authority in this case. In *Hill,* the complainant's stepson caused a warrant to be issued for the emergency apprehension and detention of complainant pursuant to TEX. HEALTH & SAFETY CODE ANN. Ch. 573. *Hill,* 897 S.W.2d at 535. The complainant was taken to the hospital for psychiatric examination. *Id.* The complainant underwent a preliminary examination by a nurse and an intern who determined the complainant was not a danger to himself or others. *Id.* at 538. The complainant was not admitted into the hospital; rather, he was sent home in a taxi within two hours of arriving at the hospital. *Id.* The court in *Hill* held that the complainant had not been "committed,"and reversed the appellant's conviction for knowingly causing an unwarranted commitment of the complainant. *Id.* at 539. The court noted:

> It is not inherently inconsistent for us to recognize that a measure is intended to prevent "railroading" of "proposed patients" while at the same time holding that "commitment" means something more than the two-hour detention and immediate re-

---

3. In ascertaining the legislative intent, the State cites an historical comment which followed the precursor to section 571.020 referred to in *Hill v. State,* 897 S.W.2d 533, 538 (Tex.App.—Fort Worth 1995, no pet.). The comment states:
For the further protection of the proposed patient, this new provision provides criminal penalties as a deterrent to "railroading."
*Hill,* 897 S.W.2d at 537.

4. The legislature amended section 571.020 in 1993, enlarging the penalties for its violation, effective September 1, 1993. Act of April 28,

1993, 73rd Leg., R.S., ch. 107, § 6.45, 1993 Tex. Gen. Laws 195, 249, eff. Aug. 30, 1993; Act of April 28, 1993, 73rd Leg., R.S., ch. 107, § 1.02(b), 1993 Tex. Gen. Laws 195, 198, eff. Sept. 1, 1993. The amendments effective August 30, 1993 were subordinated to the amendments effective September 1, 1993 in accordance with Act of April 28, 1993, 73rd Leg., R.S., ch. 107, § 1.02(b), 1993 Tex. Gen. Laws 195, 195. The amended version does not apply here, because appellant applied for emergency detention on August 31, 1993.

lease of a person not found to be a danger to himself or others.... Although [the complainant] may have been a "proposed patient" ... it does not appear from the record that he was ever admitted as a patient.

*Hill* is readily distinguishable from the present case.[5] Here, complainant was actually admitted as a patient by a doctor at the psychiatric hospital. She was assigned a room and stayed overnight. She was prevented from leaving the hospital for approximately 16 hours. The hospital performed various tests on her during the stay.

Further, additional evidence supports the jury's finding that complainant was "committed": the medical discharge summary states, "Patient was committed by Husband," and appellant himself testified that he "committed" complainant. This case is more like *Rent v. State*, 949 S.W.2d 418 (Tex.App.—Houston [14th Dist.] 1997, no pet. h.) where our sister court held the evidence was sufficient to prove the "commitment" element of the offense of unwarranted mental health commitment. 949 S.W.2d at 419–20.

We conclude that the evidence was legally and factually sufficient to support the jury's finding that complainant was committed to a mental health facility.

Appellant next complains that the evidence was legally and factually insufficient to support the jury's finding that *appellant was the person* who had complainant committed.

It is true that the jury did not have before it the "written application for emergency detention" provided for in TEX. HEALTH & SAFETY CODE ANN. § 573.011(a) (Vernon 1992). Nor did the jury see the warrant that was served on complainant when she was taken to the hospital or hear testimony about the procedure that led up to the issuance of the warrant. However, the jury did have before it: appellant's own testimony that he committed complainant; complainant's statements that appellant committed her; the constable's statement that he had a warrant requiring him to take complainant to a men-

tal hospital; and the evidence that appellant accompanied the constables to serve the warrant, and he was smiling and laughing when he told the constables, "There she is." We conclude the evidence was sufficient.

Because the evidence was legally and factually sufficient to support appellant's conviction, we overrule points of error one, two, and three.

We affirm the judgment.

---

**5.** Therefore, it is not necessary for us to state whether, in our opinion, *Hill* was correctly de-

cided, and we decline to do so.